813 F.2d 306
 Gerry RUSSELL, Administratrix of the Estate of Billy
Russell, deceased, and Oklahoma Farmers Union
Mutual Insurance Company, Plaintiffs-Appellants,
v.
AMERICAN STATES INSURANCE COMPANY, Defendant-Appellee.
 No. 84-2749.
 United States Court of Appeals,
Tenth Circuit.
 March 5, 1987.
 
 Bruce V. Winston of Stewart & Elder, Oklahoma City, Okl. (A.T. Elder, Jr., of Stewart & Elder, Oklahoma City, Okl., and Richard E. Butner of Butner & Butner, Wewoka, Okl., on the briefs), for plaintiffs-appellants.
 Henry F. Featherly of Lamun Mock Featherly Baer & Timberlake, Oklahoma City, Okl., for defendant-appellee.
 Before LOGAN and MOORE, Circuit Judges, and JOHNSON, District Judge.*
 PER CURIAM.
 
 
 1
 This appeal presents the question whether under Oklahoma law, the estate of a passenger fatally injured in an automobile accident is entitled to recover under the uninsured motorist provisions of insurance policies issued to the vehicle's driver and to the owner where the decedent's injuries exceed the limits of liability coverage under the policies. The driver and the owner were insured under separate policies by appellee American States Insurance Company (American States). We conclude that under the uninsured motorist provisions of both policies, the decedent qualified as an insured, and the vehicle in which the decedent was injured was an "uninsured motor vehicle" within the meaning of Oklahoma's uninsured motorist statute, Okla.Stat. tit. 36, Sec. 3636 (1981). Therefore, the estate is entitled to benefits under the uninsured motorist provisions of both policies. Accordingly, we reverse the district court's order granting summary judgment in favor of the appellee and remand with instructions to enter summary judgment in favor of the appellants.
 
 
 2
 On March 30, 1982, a single vehicle accident resulted in the death of Billy Russell, who was insured by appellant Oklahoma Farmers Union Mutual Insurance Company (Farmers Union) under a policy issued to his father, Bobby Russell. Appellant Gerry Russell is the administrator of Billy Russell's estate. The automobile involved in the accident was owned by Tina Sipes and was driven by Louis Glover.
 
 
 3
 Gerry Russell filed a wrongful death action against Mr. Glover in Oklahoma state court. That action culminated in a settlement agreement between Mrs. Russell, Farmers Union, and American States. According to the terms of the agreement, Farmers Union paid the estate $30,000 under the uninsured motorist coverage provided by the policy insuring Billy Russell. American States paid the estate $10,000 under the Sipes policy and $10,000 under the Glover policy, representing the maximum liability coverage under each policy. The parties agreed that damages due the estate exceeded the amounts paid.
 
 
 4
 Appellants filed for declaratory relief in the United States District Court for the Western District of Oklahoma to determine the rights of the estate under the uninsured motorist provisions of the Sipes and Glover policies. Both appellants and appellee filed motions for summary judgment. The district court determined that decedent was not covered under the uninsured motorist provision of the Sipes policy because the policy specifically provided that an "uninsured highway vehicle" does not include an insured vehicle. The court further held that while the decedent was covered by the uninsured motorist provision of the Glover policy, the estate could not proceed against that provision where the entire liability coverage was available to the injured party and the coverage was as extensive as the uninsured motorist coverage. Accordingly, the district court concluded there were no material issues of fact in dispute and granted appellee's motion for summary judgment. Gerry Russell and Farmers Union appealed, contending the district court's conclusions were contrary to law.
 
 I.
 
 5
 An appellate court must consider a summary judgment motion in the same manner as did the district court because the trial court has no real discretion in deciding whether to grant summary judgment. United States v. Gammache, 713 F.2d 588, 594 (10th Cir.1983). We therefore apply the strict standard of Fed.R.Civ.P. 56(c). Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1377 (10th Cir.1980). After examining the Sipes and Glover policies in conjunction with Oklahoma's uninsured motorist statute, Okla.Stat. tit. 36, Sec. 3636, we conclude the district court erred in determining that appellant Gerry Russell could not proceed against the uninsured motorist provisions in the Glover and Sipes policies. Because appellants have established their right to summary judgment as a matter of law, we reverse. See Mustang Fuel Corp. v. Youngstown Sheet and Tube Co., 516 F.2d 33, 36 (10th Cir.1975).
 
 II.
 A.
 
 6
 With respect to the policy of the driver, Mr. Glover, the district court relied on Heavner v. Farmers Insurance Co., 663 P.2d 730 (Okla.1983), in determining that while the decedent qualified as an insured under the Glover policy, his estate was not entitled to proceed against the driver's uninsured motorist coverage. In Heavner, an injured passenger received only $4,500 under the driver's $10,000 per person liability coverage. Although the passenger's damages exceeded that amount, the payment represented the insurer's maximum legal obligation under the driver's liability coverage due to distributions to other injured parties. After determining that the vehicle in which the passenger was injured was an "uninsured motor vehicle" under Sec. 3636, the Heavner court permitted the passenger to recover $5,500, the difference between the $4,500 payment and the policy's liability limit. The policy's uninsured motorist coverage also included a $10,000 per person limit.
 
 
 7
 The district court in the instant case interpreted Heavner to require that "where the whole of the liability coverage is available to the injured party and is as large as the uninsured motorist coverage, the injured party cannot proceed against both provisions." Because American States paid the estate the maximum liability coverage under the Glover policy, the district court reasoned that under Heavner, the uninsured motorist coverage was not available. While we do not quarrel with the district court's interpretation of the Heavner holding, that case is inapposite.
 
 
 8
 The task before the Heavner court was the application of the 1976 amendment to Sec. 3636 (Okla.Stat. tit. 36, Sec. 3636 (Supp.1976)), which defined "uninsured motor vehicle" to include an insured vehicle where the liability insurer either cannot or is not legally required to accord the injured party the per person limit of the liability coverage.[1] In a 1979 amendment to the statute, the Oklahoma legislature significantly expanded the uninsured motorist provision to include underinsured motorist coverage. MFA Insurance Co. v. Hankins, 610 P.2d 785, 787 (Okla.1980). The amended statute provides:
 
 
 9
 For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.
 
 
 10
 (Emphasis added). Because both the Glover and Sipes policies were renewed after the 1979 amendment, that statute governs the rights of the Russell estate under the uninsured motorist provisions of the policies. Uptegraft v. Home Insurance Co., 662 P.2d 681, 684 n. 2 (Okla.1983).
 
 
 11
 Okla.Stat tit. 36, Sec. 3636(A) (Supp.1979), requires that all automobile insurance policies issued, delivered, or renewed within the state include uninsured motorist coverage as described in subsection (B) of the statute.[2] The latter subsection provides, in pertinent part:
 
 
 12
 The policy ... shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ... because of bodily injury, sickness or disease, including death resulting therefrom.
 
 
 13
 Subsection (C) defines "uninsured motor vehicle." The last sentence of the 1979 amendment to Sec. 3636(C) expanded the definition to include an insured vehicle for which the liability limits of the policy when fully available to the injured party were less than the injured party's claim. In the instant case, the parties agree that Billy Russell's damages far exceed the $10,000 liability limits set out in the Glover and Sipes policies.[3] Therefore, Sec. 3636 requires that the uninsured motorist coverage provided in the Glover policy be available to the decedent's estate regardless of the insurer's payment of the liability limits under the policy, as long as the decedent qualifies as an insured under the policy.
 
 B.
 
 14
 The terms of the insurance contract determine whether Billy Russell was insured under the Glover policy. Babcock v. Adkins, 695 P.2d 1340, 1342 (Okla.1984); Shepard v. Farmers Insurance Co., Inc., 678 P.2d 250, 252 (Okla.1983). The "Protection Against Uninsured Motorist Insurance" portion of the Glover policy provides:
 
 
 15
 Each of the following is an insured under this insurance to the extent set forth below:
 
 
 16
 (a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;
 
 
 17
 (b) any person while occupying an insured highway vehicle....
 
 
 18
 American States contends that Billy Russell did not qualify as an insured under the policy because he was neither a named nor designated insured nor was he occupying an "insured highway vehicle" within the terms of the policy. An examination of the policy reveals that this contention is specious.
 
 
 19
 The "Protection Against Uninsured Motorist Insurance" portion of the Glover policy includes the following definition:
 
 
 20
 "Insured highway vehicle" means a highway vehicle to which the bodily injury liability coverage of the policy applies and which is:
 
 
 21
 (a) described in the schedule as an insured highway vehicle;
 
 
 22
 (b) being used temporarily as a substitute for an insured highway vehicle as described in Sub-paragraph (a) above; ... or
 
 
 23
 (c) being operated by the named or designated insured or if a resident of the same household, a relative of either....
 
 
 24
 While operated by Mr. Glover, the Sipes vehicle was an "insured highway vehicle" within the meaning of subsection (c). Because Billy Russell was occupying an insured highway vehicle at the time of the accident, he falls squarely within subsection (b) of the definition of an insured under the uninsured motorist coverage of the Glover policy. In Sec. 3636, the Oklahoma legislature clearly expressed its intent that every automobile insurance policy issued in the state provide uninsured motorist coverage for "persons insured thereunder." State Farm Mutual Automobile Insurance Co. v. Wendt, 708 P.2d 581, 583 (Okla.1985). Therefore, Sec. 3636 requires that uninsured motorist coverage under the Glover policy be available to Billy Russell's estate for injuries exceeding the liability limits of the policy.
 
 C.
 
 25
 American States contends that even if Billy Russell qualifies as an insured under the Glover uninsured motorist coverage, Babcock v. Adkins, 695 P.2d 1340 (Okla.1984), precludes coverage of the decedent because the case held that "one who is merely a passenger in a vehicle does not have the same rights to 'stacking' of uninsured motorist coverage as the driver or owner." Appellee misconstrues the Babcock holding. The Babcock court determined that occupants of an insured motor vehicle who are entitled to uninsured motorist coverage solely because of their status as passengers may not stack uninsured motorist coverage under separate policies purchased by the owner of the involved vehicle for noninvolved vehicles unless the occupants qualify as insureds under the separate policies. In the instant case, appellants do not seek to stack uninsured motorist coverage under separate policies covering noninvolved vehicles. Furthermore, the decedent qualifies as an insured under the policy in question. Therefore, the district court erred in concluding that Billy Russell's estate could not proceed against the uninsured motorist coverage of the Glover policy.
 
 III.
 
 26
 The district court determined that Billy Russell was not protected by the uninsured motorist provision of the Sipes policy because a part of the policy provided "in essence that 'uninsured motor vehicle' does not include the insured motor vehicle." While the district court recognized that similar policy provisions are nullified under Sec. 3636 "in some instances," it concluded that none of the statutory provisions were applicable "to abrogate the wording of the policy." The court's conclusion is contrary to Oklahoma law.
 
 
 27
 The uninsured motorist provisions of the Sipes and Glover policies were essentially identical. Because the vehicle in which Billy Russell was injured was specifically described in the Sipes policy, it was an "insured highway vehicle" under subsection (a) of the definition of that term. As a passenger in an insured highway vehicle, Billy Russell came within the definition of an insured under the policy, and under Sec. 3636, the uninsured motorist coverage should have been available to him. However, the district court determined that a further policy provision defining "uninsured highway vehicle" precluded coverage in this case. That provision states: "The term 'uninsured highway vehicle' shall not include (1) an insured highway vehicle." While the district court did not reveal the reasoning behind its conclusion, it apparently determined that the policy provision controls over the express language of Sec. 3636. The accordance of such authority to an insurance policy clearly contravenes Oklahoma law.
 
 
 28
 In State Farm Mutual Automobile Insurance Co. v. Wendt, the Oklahoma Supreme Court addressed a similar provision which excluded vehicles insured under the policy from the definition of "uninsured motor vehicle." In that case, a named insured sought to recover under the uninsured motorist coverage of his policy for injuries suffered in a single vehicle accident. The vehicle was owned by the insured and was listed in his policy schedule. At the time of the accident, the named insured was a passenger in the vehicle which was driven by an uninsured individual. State Farm denied liability to the insured, citing the exclusionary provision. After determining the exclusion conflicted with Sec. 3636, the Oklahoma Supreme Court concluded the provision was void. While the facts of the Wendt case differ in some respects from those presented by the instant case, we believe the "critical scrutiny" exercised by the court in the examination of the exclusionary provision applies here.
 
 
 29
 The Oklahoma courts have repeatedly held that "once a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S.1981 Sec. 3636...." Wendt, 708 P.2d at 583. See also Heavner, 663 P.2d at 732; Lake v. Wright, 657 P.2d 643 (Okla.1982); Keel v. MFA Insurance Co., 553 P.2d 153, 155-56 (Okla.1976). In the instant case, the exclusionary provision not only denies coverage to an injured party who qualifies as an insured under the Sipes policy, it entirely contravenes the plain language of the 1979 amendment to Sec. 3636(C): "For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim...." (Emphasis added.) This "Catch 22" provision is void because it impermissibly limits the operation of Sec. 3636, which was designed to broaden the scope of the statute to include underinsured motorist coverage. Therefore, the district court erred in concluding that Billy Russell's estate could not proceed against the uninsured motorist coverage provided in the Sipes policy.
 
 
 30
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Alan Johnson, United States District Judge for the District of Wyoming, sitting by designation
 
 
 [1]
 The 1976 amendment to Sec. 3636 defined "uninsured motor vehicle" in subsection (C):
 For the purposes of this coverage the term "uninsured motor vehicle," shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency or whose liability insurer for any reason either cannot or is not legally required to accord at least the per person coverage limits with respect to the legal liability of its insured, applicable to any injured party under any uninsured motorist coverage covering such injured party.
 
 
 [2]
 Subsection (A) specifically provides:
 No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section.
 
 
 [3]
 Gerry Russell claimed damages in the amount of $713,827 in her state court action